UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DANIEL J. KNIGHT,

        Petitioner,

v.                                      Case No. 3:12-cv-944-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.
_____

**ORDER**

**I. Status**

Petitioner Daniel J. Knight initiated this action on August 21, 2012,[1] by filing a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28 U.S.C. § 2254, an Appendix (Doc. 2), and a Memorandum of Law (Doc. 3). In the Petition, Knight challenges a 2007 state court (Duval County, Florida) judgment of conviction for trafficking in methylenedioxymethamphetamine (MDMA). Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus (Response; Doc. 15) with exhibits (Resp. Ex.). On

---

[1] Knight filed the Petition in this Court on August 23, 2012; however, giving Knight the benefit of the mailbox rule, this Court finds that the Petition was filed on the date Knight handed it to the prison authorities for mailing to this Court (August 21, 2012). See Rule 3(d), Rules Governing Section 2254 Cases in the United States District Courts. The Court will also give Knight the benefit of the mailbox rule with respect to his inmate state court filings when calculating the one-year limitations period under 28 U.S.C. § 2244(d).

September 10, 2012, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. 8), admonishing Knight regarding his obligations and giving Knight a time frame in which to submit a reply. Knight submitted a brief in reply. See Petitioner's Reply to Respondents' Motion to Dismiss (Reply; Doc. 18). This case is ripe for review.

## II. One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year statute of limitations on petitions for writ of habeas corpus. Specifically, 28 U.S.C. § 2244 provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). Like the vast majority of federal habeas petitions, § 2244(d)(1)(A) establishes the limitations period for Knight's claims.

Respondents contend that Knight has not complied with the one-year period of limitations set forth in 28 U.S.C. § 2244(d). The following procedural history is relevant to the one-year limitations issue. On August 21, 2001, the State of Florida charged Knight with trafficking in MDMA (Ecstasy), a first degree felony punishable by up to thirty years in prison. Resp. Ex. A, Information. On August 22, 2001, Knight signed a written plea of guilty and negotiated sentence and agreed that his sentence would be capped at five years, and the State would waive the three-year mandatory minimum sentence. Resp. Ex. B. The plea form states: "I understand that if I am arrested on any new charge that is supported by a finding of probable cause or if I fail to appear for any required court date this plea will stand but the negotiated cap will not and I can be sentenced to any lawful sentence which includes 30 y[ears] FSP on this charge." Id. at 10.

On August 22, 2001, Knight pled guilty in open court pursuant to the plea agreement. Resp. Ex. C, Transcript of the Plea Proceedings. Knight understood that the offense was punishable by up to thirty years in prison, but that he was pleading guilty to a maximum of five years in prison. Id. at 6. He affirmed that he had had enough time to discuss the case with his attorney, and that his attorney had satisfactorily answered his questions. Id. at 8. The trial judge informed him:

> And also if you violate the terms of this agreement or if you commit a new offense once you are released from jail and if that charge is supported by a finding of probable cause, or if you fail to appear for any of these required court dates, your guilty plea will stand and you will be sentenced to any lawful sentence, which could be up to 30 years in prison.
>
> So if you don't want to go to prison for 30 years, you have to comply with this agreement.

Id. at 8, 9. Knight affirmed that he understood the terms of the plea agreement. Id. at 8. The State provided a factual basis for the plea. Id. at 9-10. The trial judge then stated in pertinent part:

> I find there's a factual basis for the plea. Let the record show the defendant freely and voluntarily entered his plea of guilty with a full understanding of the nature of the charge, the consequences of his plea, and the maximum possible sentence herein. At this time I will accept the guilty plea.

Id. at 10. The court released Knight on his own recognizance, and deferred sentencing for sixty days. Id. at 11. The court advised Knight to write down the October 26th date and instructed him to return to court on that date. Id. Knight responded: "Yes, sir." Id. However, he failed to appear at the October 26, 2001 hearing. Nearly six years later, law enforcement found Knight in Denver, Colorado, and extradited him to Florida for sentencing. On October 30, 2007, the court sentenced Knight to a term of incarceration of thirty years with a three-year mandatory minimum term. Resp. Exs. F1; F2.

Knight appealed through counsel who filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). Resp. Ex. G. On August 7, 2008, the appellate court affirmed Knight's conviction and sentence per curiam without issuing a written opinion, see Knight v. State, 988 So.2d 625 (Fla. 1st DCA 2008); Resp. Ex. H, and the mandate issued on September 3, 2008, see Resp. Ex. I. Knight did not seek review in the United States Supreme Court.

Knight's conviction became final on Wednesday, November 5, 2008 (90 days from August 7, 2008). See Close v. United States, 336 F.3d 1283, 1285 (11th Cir. 2003) ("According to rules of the Supreme Court, a petition for certiorari must be filed within 90 days of the appellate court's entry of judgment on the appeal or, if a motion for rehearing is timely filed, within 90 days of the appellate court's denial of that motion."). Because Knight's

conviction was <u>after</u> April 24, 1996, the effective date of the AEDPA, Knight had one year from the date his conviction became final to file the federal petition (November 5, 2009). His Petition, filed on August 21, 2012, is due to be dismissed as untimely unless he can avail himself of one of the statutory provisions which extends or tolls the limitations period.

The one-year period of limitations started running on November 6, 2008, and ran for **two hundred and ninety-nine (299) days** until Knight filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on September 1, 2009. Resp. Ex. J. The State responded. Resp. Ex. K. On July 29, 2010, the circuit court denied the motion. Resp. Ex. L. On appeal, Knight filed a pro se brief, <u>see</u> Resp. Ex. M, and the State notified the court that it did not intend to file an answer brief, <u>see</u> Resp. Ex. N. On November 4, 2010, the appellate court affirmed the trial court's denial per curiam. <u>See</u> <u>Knight v. State</u>, 48 So.3d 56 (Fla. 1st DCA 2010); Resp. Ex. O. The mandate issued on November 30, 2010.[2] Resp. Ex. P.

The federal limitations period expired sixty-six (66) days later on Friday, February 4, 2011. Given the record, Knight's

---

[2] During the pendency of Knight's Rule 3.850 motion, Knight filed a pro se petition for writ of habeas corpus in the appellate court on September 1, 2009. Resp. Ex. Q. On September 29, 2009, the appellate court denied the petition on the merits, <u>see</u> Resp. Ex. R, and later denied Knight's motion for rehearing on October 28, 2009, <u>see</u> Resp. Exs. S; T.

August 21, 2012 Petition is untimely filed, and due to be dismissed unless Knight can establish that equitable tolling of the statute of limitations is warranted. The United States Supreme Court has established a two-prong test for equitable tolling, stating that a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010); Cole v. Warden, Ga. State Prison, 768 F.3d 1150, 1157-58 (11th Cir. 2014). As an extraordinary remedy, equitable tolling is "limited to rare and exceptional circumstances and typically applied sparingly." Cadet v. Fla. Dep't of Corr., 742 F.3d 473, 477 (11th Cir. 2014) (internal quotation marks omitted). The burden is on Knight to make a showing of extraordinary circumstances that are both beyond his control and unavoidable with diligence, and this high hurdle will not be easily surmounted. Howell v. Crosby, 415 F.3d 1250 (11th Cir. 2005); Wade v. Battle, 379 F.3d 1254, 1265 (11th Cir. 2004) (citations omitted). Here, Knight simply has not met the burden of showing that equitable tolling is warranted.

Knight acknowledges that his Petition is untimely filed. Nevertheless, he states that certain "exemptions" should apply. Petition at 34-37. First, he asserts that he "can establish 'cause' for his procedural default of untimeliness" under Martinez v. Ryan, 132 S.Ct. 1309 (2012). See Petition at 35, 36-37; Reply at 7-9. In

7

<u>Martinez</u>, the United States Supreme Court addressed whether ineffective assistance of counsel in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding. The <u>Martinez</u> Court modified the general rule announced in <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991) (stating that an attorney's ignorance or inadvertence in a post conviction proceeding does not qualify as cause to excuse a procedural default),[3] to expand the "cause" that may excuse a procedural default. <u>Martinez</u>, 132 S.Ct. at 1315. Recognizing a narrow exception for ineffective assistance of counsel at initial-review collateral proceedings, the Court decided that ineffective assistance of counsel during initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel at trial. <u>Id</u>. The Court held: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel at trial if, in the initial-review collateral proceeding, there was no

---

[3] In <u>Coleman</u>, the alleged ineffectiveness of counsel was on appeal from an initial-review collateral proceeding, and in that proceeding the prisoner's claims had been addressed by the state habeas trial court. 501 U.S. at 755. However, the <u>Martinez</u> Court addressed inadequate assistance of counsel at an initial-review collateral proceeding.

counsel or counsel in that proceeding was ineffective." Id. at 1320; see also Gore v. Crews, 720 F.3d 811, 816 (11th Cir. 2013).

Subsequently, on May 28, 2013, the United States Supreme Court extended Martinez's rule to cases where state law technically permits ineffective assistance of trial counsel claims to be raised on direct appeal, but state procedures, as a practical matter, make it "virtually impossible" to actually raise such claims on direct appeal. Trevino v. Thaler, 133 S.Ct. 1911, 1918 (2013) (citation omitted). The Court held that where a state's "procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, [the] holding in Martinez applies[.]" Trevino, 133 S.Ct. at 1921.

In January 2014, the Eleventh Circuit addressed an appeal of a district court's denial of a federal Rule 60(b)(6) motion for relief from judgment, filed by death row inmate Thomas Arthur. See Arthur v. Thomas, 739 F.3d 611 (11th Cir. 2014), cert. denied, 83 U.S.L.W. 3003, 3169, 3185 (U.S. Oct. 6, 2014) (No. 13-1451, 13A905). In Arthur's counseled Rule 60(b)(6) motion, he argued that, in light of the United States Supreme Court's decision in Martinez, the district court should reconsider its dismissal of Arthur's habeas petition as untimely. In denying the motion, the district court concluded that: (1) a change in decisional law by

itself was not the type of "extraordinary circumstance" required to trigger Rule 60(b)(6); (2) a change in the law, combined with an assertion of ineffective trial counsel, also was not an "extraordinary circumstance" sufficient to obtain relief under Rule 60(b)(6); and (3) even if a change in decisional law combined with Arthur's assertion that his trial counsel was ineffective constituted an "extraordinary circumstance" under Rule 60(b)(6), the <u>Martinez</u> decision was not applicable to the facts of Arthur's case. Affirming the district court's denial of Arthur's Rule 60(b)(6) motion, the Eleventh Circuit specifically held that the <u>Martinez</u> and <u>Trevino</u> decisions did not apply in Arthur's case, and Arthur failed to show an extraordinary circumstance to justify the granting of Rule 60(b)(6) relief.

The Eleventh Circuit explained that the <u>Martinez</u> rule does not apply where a petitioner's habeas petition was denied due to his failure to timely file a habeas petition in federal court.

> In contrast, Arthur's case does not involve "cause" under the procedural default doctrine. Arthur's § 2254 petition was dismissed because he filed it well after AEDPA's limitations period expired, and he showed no basis for tolling. See <u>Arthur</u>, 452 F.3d at 1250–54. Arthur's case concerns only the operation of a <u>federal</u> rule -- namely, the operation of AEDPA's one-year statute of limitations. It was wholly the operation of AEDPA's <u>federal</u> limitations period -- independent of any state procedural rule -- that barred Arthur's § 2254 petition. Because Arthur's § 2254 petition was denied due to his complete failure to timely file that § 2254 petition, the Supreme Court's analysis in

>     Martinez and Trevino of when and how "cause" might excuse noncompliance with a state procedural rule is wholly inapplicable here.
> 
>     For all of these reasons, the Martinez rule does not apply at all to Arthur's case. Predicting this result, Arthur asserts that we should broaden the equitable *reasoning* behind the Martinez rule and apply it to his case. But, any such broadening would ignore the Supreme Court's emphatic statements that the Martinez rule creates only a narrow exception to Coleman's general rule. See Martinez, 132 S.Ct. at 1315 (referring to a "narrow exception"); id. at 1320 (referring to the "limited circumstances" in which its ruling applied and discussing the "limited nature" of the rule); Trevino, 133 S.Ct. at 1921 (applying Martinez's "narrow exception"). **Thus, we also hold that the reasoning of the Martinez rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period.** The narrow exception in the Martinez rule is designed to be hard to meet "to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." Martinez, 132 S.Ct. at 1316.

Arthur, 739 F.3d at 630-31 (emphasis added).

Thus, Knight's reliance on Martinez is misplaced. As previously explained, the Court, in Martinez, addressed whether an ineffective assistance of counsel can constitute cause for procedural default; it neither addressed equitable tolling nor AEDPA's statute of limitations. Similar to the Arthur case, Knight's case does not involve "cause" under the procedural default doctrine. Thus, since Knight's habeas petition is due to be dismissed because he filed it after AEDPA's one-year statute of

11

limitations period expired, and he has shown no basis for tolling, the Supreme Court's analysis in <u>Martinez</u> and <u>Trevino</u> of when and how "cause" might excuse noncompliance with a state procedural rule is not applicable. <u>See</u> <u>Arthur</u>, 739 F.3d at 630-31.

As to Knight's claim of actual innocence, <u>see</u> Petition at 35-36; Reply at 3-7, this Court finds that he has not made the requisite showing. To make a showing of actual innocence, Knight must show "that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt." <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995). In assessing the adequacy of a petitioner's showing, the Supreme Court has stated:

> The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

<u>Id</u>. at 329; <u>see</u> <u>also</u> <u>Sibley v. Culliver</u>, 377 F.3d 1196, 1205 (11th Cir. 2004) (stating that "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new

evidence") (citations omitted). Moreover, "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." McQuiggin v. Perkins, 133 S.Ct. 1924, 1935 (2013). Again stressing that "the Schlup standard is demanding[,]" the Supreme Court stated: "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Id. at 1936 (quoting Schlup, 513 U.S. at 316).

    Here, Knight has not offered any new reliable evidence that was not available at the time of his plea. He has not produced exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not available at the time of his plea. Indeed, he has failed to point to any evidence to demonstrate that it is more likely than not that no juror, acting reasonably, would have found him guilty beyond a reasonable doubt in light of new evidence. This is not an "extraordinary" case under the Schlup standard. House v. Bell, 547 U.S. 518, 538 (2006).

    Knight has not shown a justifiable reason why the dictates of the one-year limitations period should not be imposed upon him. For this reason, this Court will dismiss this case with prejudice pursuant to 28 U.S.C. § 2244(d) as time-barred.

### III. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Knight seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Knight "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon

14

consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Knight appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of November, 2014.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

sc 11/7
c: Daniel J. Knight
   Ass't Attorney General (Conley)